1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

9

10 | ALEXANDER LABUGA, JR.,                )   1:07-cv-1807 GSA
    |                                      )
11 |         Plaintiff,                    )   **ORDER REGARDING DEFENDANT**
    |                                      )   **UNITED FOOD & COMMERCIAL**
12 |    v.                                 )   **WORKERS 8 GOLDEN STATE'S**
    |                                      )   **MOTION FOR SUMMARY JUDGMENT**
13 | DARLING INTERNATIONAL, INC.;          )
    | UFCW 8 GOLDEN STATE; and             )   (Documents 30-36)
14 | DOES 1-100,                           )
    |                                      )
15 |         Defendants.                   )
    |                                      )
16 | _____ )

17
18
19

### I.

20

**DEFENDANT UNITED FOOD AND COMMERCIAL**
**WORKERS 8'S MOTION FOR SUMMARY JUDGMENT**

21

22     **A.**    **Relevant Procedural Background**

23       On December 12, 2007, Plaintiff Alexander D. Labuga, Jr. filed this action against his

24 employer, Darling International, Inc. ("Darling") and the union of which he was a member during

25 the course of his employment.  The complaint alleged four causes of action: (1) a breach of

26 written contract; (2) a breach of duty of fair representation by United Food and Commercial

27
28 1

1   Workers 8 ("UFCW 8" or "union") Golden State; (3) a violation of the Civil Rights Act of 1964;

2   and (4) a violation of section 17200 of the California Business and Professions Code.

3          On January 24, 2008, UFCW 8 filed its answer to the complaint. (Doc. 7.) On January

4   30, 2008, Darling filed a motion to dismiss the third cause of action. (Doc. 10.) On June 23,

5   2008, United States District Court Judge Anthony W. Ishii ordered that Plaintiff's third cause of

6   action be dismissed without prejudice. (Doc. 16.)

7          On August 13, 2008, UFCW 8 filed an amended answer to the complaint. (Doc. 22.) On

8   August 18, 2008, Darling also filed an amended answer. (Doc. 24.)

9          Following consent to magistrate jurisdiction by all parties, this matter was referred to the

10  Honorable Gary S. Austin, Magistrate Judge, on April 24, 2009, for all further proceedings.

11  (Doc. 29.)

12         On June 10, 2009, UFCW 8 filed its Motion for Summary Judgment. (Doc. 32.) On June

13  29, 2009, Darling filed its Request for Joinder in Defendant UFCW 8's Motion for Summary

14  Judgment. (Doc. 37.) On July 13, 2009, Plaintiff filed his Opposition to Defendants' Joint

15  Motion for Summary Judgment. (Doc. 40.) On July 23, 2009, Defendants filed responses to

16  Plaintiff's opposition. (Docs. 43-46.)

17         On July 24, 2009, this Court took the July 31, 2009, hearing off calendar and took the

18  matter under submission. (Doc. 47.) *See* Local Rule 78-230(h).

19         **B.      Stipulation Concerning Fourth Cause Of Action**

20         On July 16, 2009, this Court signed a Stipulation and Order for Dismissal of the Fourth

21  Cause of Action. (Doc. 42.) In light of the stipulation, filed subsequent to the motion, the Court

22  will not consider the parties' arguments with regard to California Business and Professions Code

23  section 17200, *et seq*.

24  //

25  //

26  //

27

28                                                          2

1    **C.      Defendant Darling's Request Re Joinder**

2        As noted above, Darling filed a request to join in UFCW 8's Motion for Summary

3    Judgment on June 29, 2009.  (Doc. 37.)  Because resolution of Plaintiff's claims against UFCW

4    8 are dispositive of Plaintiff's claims against Darling, Darling's request to join is granted.

5    **D.      Supplemental Authorities**

6        On November 4, 2009, counsel for Defendant UFCW 8 sent a letter to this Court seeking

7    to call the Court's attention to an opinion of the Honorable Oliver W. Wanger, District Judge, in

8    case number CV-F-09-1756 OWW DLB, *Smith v. Pacific Bell Telephone Company, Inc.*

9        On November 13, 2009, counsel for Plaintiff directed email correspondence to Carrie

10   Esteves, Courtroom Deputy to Judge Austin, wherein counsel objected to the November 4

11   correspondence and indicated Defendant's November 4, 2009, letter constitutes an attempt to file

12   a sur-reply in the absence of leave of court.

13       Assuming Defendant's November 4, 2009, letter can be construed as a sur-reply, Rule

14   230 of the Local Rules of the United States District Court for the Eastern District of California

15   do not permit such a filing.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27

28                                             3

### E.    Summary of Undisputed Facts[1]

1.    Plaintiff was hired by Darling in January 1991.

2.    UFCW 8 had no role in Plaintiff's hire by Darling.

3.    Thereafter, Plaintiff became a member of the union.

4.    A written collective bargaining agreement ("CBA") existed between the union and Darling.

5.    Plaintiff was suspended on May 30, 2007, having returned from a one-hour lunch break after a total of three hours and twenty-one minutes.

6.    Plaintiff claimed he was late due to a flat tire.

---

[1]Plaintiff has objected to a number of UFCW 8's undisputed facts.  The Court has carefully reviewed every objection and finds as follows: With regard to undisputed fact numbers 5, 10-11, 13, 18-23, 25, 27-32, 35-38, Plaintiff's objections are unresponsive.  The statement is misconstrued by Plaintiff in the first instance or offers evidence in support of the objection that is unresponsive to the statement offered by UFCW 8.  Moreover, with regard to undisputed fact numbers 9 and 14, a careful reading of the evidence in a proper context reveals Plaintiff's objections and the evidence offered in support are incorrect or have been grossly mischaracterized (e.g., Plaintiff asserts "Bundy stated there was a spare (donut) tire and the lugnuts looked like they had been removed" and "Dix saw the car had a spare tire on it when [Plaintiff] returned from work." [Doc. 40 [response to Defendants' Separate Statement of Undisputed Facts] at 7.] Plaintiff cites to the following language: "We just walked around the car and seen that there was a donut tire or, you know, the lugnuts looked they have had been removed and they were all still, you . . .." [Doc. 40, Ex. F, 17:1-3.]  However, when viewed in context of the whole discussion, it becomes plain that Bundy did *not* find evidence of a tire change:

> [BUNDY]: . . . He said that he had a flat tire, and we did an investigation on his tires.  He didn't have no evidence of having a flat tire or nothing at that time when we did this.
> Q.  When did you investigate the flat tire?
> A.  As soon as he told us he had a flat tire at that time.
> Q.  Okay.  So when you say "we," who do you mean by "we"?
> A.  Me and Dave Bizzanelli, the plant manager.
> Q.  *What did your investigation consist of?*
> A.  We just walked around the car and seen that there was a donut tire, or you know, the lugnuts looked they had been removed and *they were all still, you know had the normal dust on them. There was - - all the tires were matching.*

[Doc. 35, Ex. 6 at 16:15-17:5, emphasis added].)

4

7.      Before leaving on May 30, 2007, Plaintiff called union representative Carlos Valenzuela for the purpose of filing a grievance.

8.      On June 1, 2007, a grievance meeting was held in Darling General Manager Jim Rother's office at the request of Valenzuela.  Plaintiff was present.  Roth provided Plaintiff with a letter dated June 1, 2007, wherein Plaintiff's employment was terminated.

9.      Plaintiff admits the factual assertions contained in the June 1, 2007, letter of termination are factually accurate, i.e., Plaintiff was more than two hours late returning from a lunch break, he had received several previous warnings regarding absenteeism and work behavior.

10.     The union requested a Board of Adjustment meeting under the terms of the CBA. Present were Roth, and Darling employees Tim Pilcher, Dave Mullinex and Richard Bundy. Also present were Mike Fursman on behalf of the union, Valenzuela and Plaintiff.

11.     Roth presented Darling's case at the Board of Adjustment meeting, relying upon a document entitled "Talking Points" and referring to supporting exhibits in support of Darling's position that it had just cause for Plaintiff's termination.

12.     Plaintiff recalled Roth's presentation and Roth's reference to various documents.

13.     Roth advised the Board of Adjustment that an investigation of Plaintiff's vehicle's tires upon his return failed to support Plaintiff's claim that he changed a tire on the vehicle.

14.     Plaintiff's vehicle was inspected by Darling's assistant plant managers Bundy and Dave Bizzanelli; neither found evidence of a tire change.

15.     Plaintiff told the Board that he had a flat tire but that he could not telephone Darling because his cell phone was charging back at the plant.

16.     Plaintiff is not aware of any person who witnessed him alongside the road with a flat tire on the vehicle.[2]

---

[2]Plaintiff disputes this fact.  Plaintiff states he has admitted that "no one stopped to help him not that there were no witnesses."  He points to page 96, lines 20 through 22 of his deposition in support of his position.  The passage reads as follows: "Q.  Did anyone witness you

17.    Plaintiff contends it took him the entire two hour and twenty minute period, over his one hour lunch break, to change the vehicle's flat tire with a miniature spare from the vehicle's trunk.

18.    Plaintiff claims the tire was repaired, however, he did not have a receipt as evidence of the repair.

19.    Plaintiff acknowledges that he had an opportunity to respond to questions asked of him at the Board of Adjustment hearing.

20.    Plaintiff did not have any witnesses he wished the union to call to testify at the meeting, yet also claimed he would have called his girlfriend as a witness because she was present when the tire was repaired.  However, Plaintiff did not tell the union representative about her and the union did not know she was a potential witness.

21.    Plaintiff agreed there was nothing the union could have investigated with regard to his claim of a flat tire.

22.    Plaintiff admitted he did not have any documents to present to the Board at the hearing.

23.    Plaintiff admitted he did not ask the union to make any inquiry of Darling at the Board hearing.

24.    Plaintiff is not aware of any other Darling employee, whom was more than two hours late from lunch, and upon whom's behalf a grievance was taken to arbitration by the union.

25.    Plaintiff did not advise the union that he was discriminated against by Darling.

_____

have a flat tire or witness you stuck by the side of the road with a flat tire?  A.  No, no.  I mean, no one stopped."  (*See* Doc. 40  [response to Defendants' Separate Statement of Undisputed Facts] at 7-8 & Ex. B.)  Defendant had offered the same passage as evidence of its statement, and in its reply to Plaintiff's opposition to the motion, Defendant asserts Plaintiff's objection is "nonresponsive."  (Doc. 45 at 3.)  The Court disagrees in this instance.  Thus, this statement is in dispute.  Nevertheless, it is not material to the dispute because Plaintiff has only identified a single "witness" whom he admits was not with him when he got a flat tire during his lunch period.  Rather, his witness, Lindsey Dix, was purportedly with him when he subsequently had the tire repaired.

26.     Following the hearing, the Board of Adjustment vote was 2-2.

27.     Fursman asked for arbitration in order to preserve the right to seek arbitration within the time prescribed while he evaluated the grievance further.

28.     Valenzuela had heard from other Darling coworkers, prior to Plaintiff's termination, that Plaintiff would take two to three hour lunches when managers were not present. As a result, Valenzuela felt Plaintiff had finally been caught and found it difficult to believe Plaintiff had suffered a flat tire.

29.     Fursman decided the union would not proceed to arbitration regarding Plaintiff's grievance because he believed it lacked merit sufficient to justify arbitration.

30.     Fursman advised Plaintiff in a letter dated July 20, 2007, that the union would not proceed to arbitration.  Plaintiff acknowledged receiving the letter.

31.     Plaintiff does not believe the union's election not to proceed to arbitration was made on a basis other than that stated in the letter of July 20, 2007.

32.     Plaintiff admits a belief that neither Fursman nor Valenzuela hold any ill will towards him.

33.     Plaintiff admits a belief that neither Fursman nor Valenzuela were biased against him on the basis of his Filipino national origin.

34.     Plaintiff admits that he has not heard anyone in the union make a negative comment concerning people of the Filipino national origin.

35.     Plaintiff did not tell Valenzuela that Darling sent him home as a result of his national origin.

36.     Plaintiff spoke during the Board of Adjustment proceeding, and did not claim that Darling terminated his employment as a result of his national origin.

37.     Plaintiff does not believe the union could have done anything on his behalf, except for proceeding to arbitration.

38.     Plaintiff believes that the union must arbitrate a grievance even if the union perceives the grievance to be one that will fail.

39.     The union received only an initiation fee in 1991 and period union dues payments, pursuant to the terms of the CBA, from Plaintiff.

**F.     Affidavits**

*Lindsey Dix*

Plaintiff offers the affidavit of Lindsey Dix in support of his opposition to the pending motion.  Ms. Dix and Plaintiff have lived with one another since 2004.  Generally, Ms. Dix claims she was present with Plaintiff on May 31, 2007, when the tire was repaired on the 2007 Ford Focus she owned.  She claims the tire was repaired at Garcia Tires in Livingston, California, but a receipt was not obtained because the repair fee was nominal and Plaintiff paid cash.  Ms. Dix declares her vehicle had a small spare tire on it when Plaintiff returned from work prior to the repair having been made.  (Doc. 40, Dix Decl.)

UFCW 8 points out generally that it was not aware that Ms. Dix could have been a witness to the events in question because no mention of her was made until Plaintiff's deposition was taken in this matter.  (Doc. 45 at 4.)   Darling objects to the affidavit of Lindsey Dix because it "is irrelevant in that Ms. Dix cannot corroborate that Plaintiff had a flat tire during a meal break from work, does not state when the spare [tire] was placed on Plaintiff's vehicle" or why Plaintiff failed to contact his employer about the flat tire.  (Doc. 44 at 1.)

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible . . ..  Evidence which is not relevant is not admissible."  There are limits to the broad definition of "relevant evidence" as the evidence must be probative of a fact of consequence in the matter and must have tendency to make the existence

1  of that fact more or less probable than it would have been without the evidence.  *United States v.*

2  *Curlin*, 489 F.3d 935, 942-44 (9th Cir. 2007).

3  Since Ms. Dix was not present during Plaintiff's meal period it would be difficult to

4  imagine how she could state that her vehicle sustained a flat tire during that time period.  Next,

5  because neither UFCW 8 nor Darling was aware Ms. Dix was even a potential witness until the

6  date of Plaintiff's deposition in this matter - about a year and a half after the May 30, 2007,

7  incident - whatever information Ms. Dix may have does not speak to whether or not UFCW 8

8  breached its duty of fair representation.  Thus, Ms. Dix's affidavit is irrelevant to Plaintiff's

9  claims and as such is not probative of a fact of consequence.   Defendants' objections are

10  sustained.

11  *Pamela Noa*

12  Ms. Noa declares that she was asked to "recount a story that was not true" about Plaintiff

13  concerning reimbursement of work boots in March 2007 (Doc. 40, Noa Decl., ¶¶ 2-3); she

14  learned he had been terminated when she contacted him concerning harassment she personally

15  suffered at the company (Doc. 40, Noa Decl., ¶ 4); she advised Mr. Valenzuela that she had never

16  complained of Plaintiff and that "the company had lied" (Doc. 40, Noa Decl., ¶ 5); she "later

17  found out that the company found no reason to fire" Plaintiff (Doc. 40, Noa Decl., ¶ 6); she

18  overheard a supervisor refer to Plaintiff as "that gook" (Doc. 40, Noa Decl, ¶ 8) and overheard a

19  comment that "'they were going to get rid of'" of Plaintiff (Doc. 40, Noa Decl., ¶ 9).

20  UFCW 8 objects to Ms. Noa's affidavit as irrelevant because it cannot "show the Union

21  was arbitrary, discriminatory or [acted] in bad faith with respect to" Plaintiff's matter as Ms. Noa

22  does not have any information regarding the specific incident that led to Plaintiff's termination.

23  (Doc. 45 at 5.)  Darling objects to Ms. Noa's affidavit as irrelevant on the whole and also objects

24  on others grounds, including that the affidavit relies upon hearsay, lacks foundation, is vague and

25  ambiguous, and is speculative and conclusory.  (Doc. 44 at 1-2.)

26  //

27

28                                                                      9

1  //

2

3       Significantly, because Ms. Noa's affidavit is the first notice that either UFCW 8 or

4  Darling have of her testimony, the information was not available to the union and thus could not

5  have any relevance to whether or not UFCW 8 breached its duty of fair representation.

6       Rule 801(c) of the Federal Rules of Evidence provides as follows: "'Hearsay' is a

7  statement, other than one made by the declarant while testifying at the trial or hearing, offered in

8  evidence to prove the truth of the matter asserted."  Hearsay is inadmissible except as provided

9  by the Federal Rules of Evidence or other rules prescribed by the Supreme Court.  Fed. R. Evid.

10  802.  Specifically, paragraphs 2 and 3 of Ms. Noa's declaration contain out of court statements

11  offered to prove the truth of the matter asserted and are inadmissible as such.  No hearsay

12  exception would apply.  *See* Fed. R. Evid. 803.  For the same reason, the statement attributed to

13  Carlos Valenzuela in paragraphs 5 and Richard Bundy in paragraphs 8 and 9 are inadmissible.

14       Defendants' objections based upon relevancy and hearsay are sustained.  The information

15  in Ms. Noa's affidavit is not probative of a fact of consequence.

16                                          **II.**

17                                  **LEGAL STANDARDS**

18       Federal Rules of Civil Procedure, rule 56(b) permits a "party against whom relief is

19  sought" to seek "summary judgment on all or part of the claim."  Summary judgment is

20  appropriate when there exists no genuine issue as to any material fact and the moving party is

21  entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith*

22  *Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

23  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment

24  is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for

25  trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of*

26  *Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

27

28                                          10

1    The moving party

2    always bears the initial responsibility of informing the district court of the basis
     for its motion, and identifying those portions of "the pleadings, depositions,
3    answers to interrogatories, and admissions on file, together with the affidavits, if
     any," which it believes demonstrate the absence of a genuine issue of material
4    fact.

5    *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986).

6        To carry its burden of production on summary judgment, a moving party "must either

7    produce evidence negating an essential element of the nonmoving party's claim or defense or

8    show that the nonmoving party does not have enough evidence of an essential element to carry its

9    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,

10   210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance*

11   *Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the

12   motion, the moving party must persuade the court that there is no genuine issue of material fact."

13   *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the

14   substantive law will identify which facts are material. Only disputes over facts that might affect

15   the outcome of the suit under the governing law will properly preclude the entry of summary

16   judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

17       "If a moving party fails to carry its initial burden of production, the nonmoving party has

18   no obligation to produce anything, even if the nonmoving party would have the ultimate burden

19   of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes v. S.H. Kress & Co.*, 398

20   U.S. 144, 160, 90 S.Ct. 1598 (1970). "If, however, a moving party carries its burden of

21   production, the nonmoving party must produce evidence to support its claim or defense." *Nissan*

22   *Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to

23   produce enough evidence to create a genuine issue of material fact, the moving party wins the

24   motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*,

25   477 at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for

26   discovery and upon motion, against a party who fails to make the showing sufficient to establish

27

28                                    11

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

Under Federal Rules of Civil Procedure, rule 56(d)(1), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of

12

action but not as to others, or as to some issues but not as to others, or as to some parties, but not

as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five*

*Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*,

878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific

issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051,

1055 (S.D. Cal. 1977).

### III.

### DISCUSSION

#### *Plaintiff's Second Cause of Action - Breach of Duty of Fair Representation*

Plaintiff's complaint alleges a breach of the duty of fair representation by UFCW 8 for its

arbitrary, discriminatory and bad faith failure or refusal to present Plaintiff's grievance to an

arbitrator as provided for in the CBA following his termination from Darling.[3]

The duty of fair representation doctrine serves as a "bulwark to prevent arbitrary union

conduct against individuals stripped of traditional forms of redress by the provisions of federal

labor law." *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967).  "Under

the doctrine, a union must represent fairly the interests of all bargaining-unit members during the

negotiation, administration, and enforcement of collective-bargaining agreements. [Citation.]  In

particular, a union breaches its duty when its conduct is arbitrary, discriminatory, or in bad faith

. . .." *International Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 60

L.Ed.2d 698 (1979).  "A union's conduct is 'arbitrary' if it is 'without rational basis,' . . . or is

---

[3]As previously noted, Plaintiff's first cause of action concerns a breach of written contract
for wrongful termination by Darling.  As the UFCW 8 notes, "if a union has not breached its duty
[of fair representation], both the union <u>and</u> the employer are automatically entitled to a judgment
of dismissal" and therefore UFCW 8 did not move for summary judgment on the first cause of
action for "if [Plaintiff] cannot prevail against UFCW 8 [for a breach of fair representation], he is
not entitled to pursue his alleged wrongful termination claim against Darling."  (Doc. 33 at 1-2,
emphasis in original.)  As noted in *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1444
(9th Cir. 1994), a union's liability is a condition precedent to a party prevailing against an
employer.

'egregious, unfair and unrelated to legitimate union interests,'" *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), or is "so far outside a 'wide range of reasonableness' . . . as to be irrational." *Airline Pilots Assoc. v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).  Under these exacting standards, "unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances." *Peterson*, 771 F.2d at 1254.  Rather, "something more than negligence must be shown." *Peters v. Burlington Northern RR,* 931 F.2d 534, 538 (9th Cir. 1991).

In determining whether a union has breached its duty of fair representation to a member, the Court must apply slightly different standards of review, depending on whether the union's act or failure to act involved the union's judgment, or was procedural or ministerial in nature.  If the alleged union misconduct was "procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith." *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1486 (9th Cir. 1993).  The union is not liable for "mere negligence," because "to be arbitrary, the union must have acted in 'reckless disregard' of the union member's rights." *Id*.  Thus, a union may be liable when it simply fails to perform a ministerial act which is required of it and that failure "completely extinguishes the employee's right to pursue his claim." *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983) (liability imposed where union failed to complete its investigation of member's complaint of improper discharge before grievance filing deadline had expired, and member's right to challenge employer's action was extinguished).

In contrast, if the conduct in question involved the exercise of the union's judgment, "then the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d at 1486.  When the union's judgment is challenged – such as its decision whether and to what extent to pursue a particular grievance - "the union must balance many collective and individual interests," and thus "courts should

14

accord substantial deference to the union's decisions," even when its decision results in a loss to some of its members. *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d at 1274-75 (union will not be liable for "mere errors of judgment in processing grievances"); *see also Stevens v. Moore Business Forms*, 18 F.3d at 1447 ("A union's decision to pursue a grievance based on its merits or lack thereof is considered an exercise of its judgment").

## A.      Investigation and Handling of Grievance

In his complaint, Plaintiff complained "the union's efforts were futile because they failed to conduct a meaningful investigation with the assistance of the Plaintiff.  The Plaintiff informed the Union that his termination was the result of discrimination and the Union failed to investigate . . .." (Doc. 2 at 8.)

In response to UFCW 8's motion, Plaintiff asserts that the union "utter[ly]" failed to adequately investigate his grievance.  (Doc. 40 at 8.)  More particularly, Plaintiff complains that (1) Valenzuela, his union representative, only met with Plaintiff five minutes prior "to the meeting that would seal his fate" and that Valenzuela "admitted that he questioned the veracity of the union member he was responsible for defending;" (2) Plaintiff was not told by anyone he could present witnesses and thus the opportunity to present the testimony of Lindsey Dix and the owner of Garcia's Tire Shop in Livingston was lost; and (3) that former Darling employee Ms. Noa was approached prior to Plaintiff's dismissal, by Darling employees, to lie about Plaintiff so that they could discharge him sooner.  (Doc. 40 at 8-9.)

UFCW 8 responds that Plaintiff did not advise union officials that he could prove he had a flat tire by calling his girlfriend as a witness; he did not tell Valenzuela or Fursman, nor did he mention it during the Board of Adjustment meeting.  Rather, the first mention by Plaintiff of a witness was made  at his deposition.  Thus, the union could not have interviewed Ms. Dix or the owner of the tire shop because the union was not advised by Plaintiff of their existence.  (Doc. 45 at 4-5.)  Moreover, the union did not know of Ms. Noa's information until the affidavit was filed on July 9, 2009, and in any event, Ms. Noa's affidavit does not concern the incident that led to

1   Plaintiff's termination, and thus does not speak to whether or not the union breached its duty of

2   fair representation to Plaintiff.  (Doc. 45 at 5.)

3

4   Darling contends that even had Valenzuela chosen not to believe Plaintiff's story about

5   the flat tire, it was not Valenzuela's determination to make.  Rather, that decision was made by

6   Mike Fursman.  (Doc. 43 at 3.)  Moreover, asserts Darling, Fursman's decision was reasonable

7   and made in good faith.  (Doc. 43 at 3-4.)

8        **B.        The Investigation Was Sufficient**

9        A union may not ignore a meritorious grievance or fail to conduct a minimal

10  investigation.  An investigation pursued in good faith and according to the union's rational

11  judgment will not constitute a breach of the union's duty of fair representation.  *Peterson v.*

12  *Kennedy*, 771 F.2d at 1254.  "The thoroughness with which unions must investigate grievances

13  in order to satisfy their duty varies with the circumstances of each case."  *Tenorio v. National*

14  *Labor Relations Board*, 680 F.2d 598, 601 (9th Cir. 1982).

15       Here, the union conducted an adequate investigation.  The undisputed facts demonstrate

16  that the union had no evidence to counter the statements of Darling employees Richard Bundy

17  and Dave Bizzanelli.  Moreover, shortly after Plaintiff's return to the plant wherein Plaintiff

18  claimed he was late due to a flat tire, the two men inspected Plaintiff's tires for evidence of a

19  recently changed tire.  (Doc. 31, Undisputed Fact Nos. 13 &14.)  Both looked at all four wheels

20  and tires on the vehicle.  All tires matched.  None of the lug nuts on any of the vehicle's wheels

21  appeared to have been recently disturbed.  In fact, Bundy testified all lug nuts exhibited "normal

22  dust."  (Doc. 35, Ex. 5 at 16-17.)  Moreover, despite Plaintiff's contention that he had the tire

23  repaired at Garcia's Tire in Livingston, he could not produce a receipt or other documentation in

24  support of his claim, nor did he adviser officials of the repair.

25       Additionally, Plaintiff admitted that he did not tell the union or Darling representatives

26  that Lindsey Dix was a witness.  (Doc. 31, Undisputed Fact No. 20; see also Doc. 34, ¶ 6.)  He

27

28                                                  16

did not tell any union official about the tire repair at Garcia's Tire Shop in Livingston. (Doc. 31, Undisputed Fact No. 18.)

Finally, at his deposition, Plaintiff indicated that there was nothing more the union could have investigated.  (Doc. 31, Undisputed Fact No. 21; *see also* Doc. 35, Ex. 2 at 41.)

Therefore, no other investigation need be pursued in good faith and according to the union's rational judgment.  *Peterson v. Kennedy*, 771 F.2d at 1254.

In his opposition to the motion, Plaintiff stated that "[w]ithout the underlying data such as . . . production of the flat tire it would be difficult to make any reasoned decision." (Doc. 40 at 12.)  Plaintiff provides no authority that would require the union to produce and/or separately inspect the tire in question.  Furthermore, Plaintiff's reliance on *Tenorio* is unavailing for the facts are clearly distinguishable.  In *Tenorio*, the union failed to take any statement whatsoever from its members concerning a purported assault, whereas here, the union had but one statement to be concerned with: Plaintiff's statement that involved a simple matter of a flat tire.

The union considered Plaintiff's excuse for being more than two hours late returning from his lunch break, compared it to the evidence before it, considered the previously imposed progressive discipline employed by Darling involving Plaintiff, and presented the matter to legal counsel for consideration.  (Doc. 34, ¶¶ 5-6 & Ex. 2; see also Doc. 35, Ex. 4 at 74-75.)  The union offered a reason for not pursuing Plaintiff's grievance. (Doc. 34, ¶ 7.)  *See Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1222 (9th Cir. 2000).

In sum, the union had eyewitness statements that Plaintiff's vehicle was inspected upon his return to the Darling plant by two separate Darling employees.  The employees viewed all four tires and wheels on the vehicle and found no evidence to indicate a tire had recently been changed.  Plaintiff could not provide any evidence to the contrary, nor did he advise the union of any potential witnesses.  The union's thoroughness in light of the information available to it at the time satisfied its duty.  *Tenorio v. National Labor Relations Board*, 680 F.2d at 601; *see also*

1  *Peterson v. Kennedy*, 771 F.2d at 1254.  Additionally, courts are typically "unwilling to subject

2  unions to liability" for errors regarding the thoroughness of an investigation.  *See Peterson v.*

3  *Kennedy*, 771 F.2d at 1256.

4      Unlike the situation in *Tenorio* where the union failed to afford the aggrieved parties an

5  opportunity to explain themselves despite a policy to the contrary (*Tenorio v. National Labor*

6  *Relations Board*, 680 F.2d at 600), in this matter Plaintiff was afforded an opportunity to explain

7  his version of events.  (Doc. 31, Undisputed Fact Nos. 15 & 19.)

8      A union only acts arbitrarily if its behavior is "so far outside a 'wide range of

9  reasonableness,' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. at 67, 111 S.Ct.

10  1127 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048

11  (1953)). Mere negligence or poor judgment on the part of the union is insufficient under this

12  standard. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 372-373, 110 S.Ct. 1904,

13  109 L.Ed.2d 362 (1990).  A union decision is arbitrary only if it lacks a rational basis.  *Robesky v.*

14  *Qantas Empire Airways Ltd.*, 573 F.2d 1082, 1089 (9th Cir. 1978).

15      Here, the union's investigation was neither arbitrary nor irrational.  The investigation was

16  rational and reasonable in light of the circumstances known to the union.  *Tenorio v. National*

17  *Labor Relations Board*, 680 F.2d at 601.

18      **C.      The UFCW 8's Judgment Call**

19      Here, UFCW 8's decision not to proceed to arbitration is an act of judgment, rather than a

20  ministerial act.  *See Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d at 1274-75.  A court "may

21  decline to give a union the deference owed to an exercise of judgment only where union actions

22  or inactions are 'so far outside a wide range of reasonableness that [they are] wholly irrational or

23  arbitrary.'" *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 879

24  (9th Cir. 2007), citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. at 78.

25      Mike Fursman is the Meat Division Coordinator for UFCW 8.  (Doc. 34, ¶ 1.)  His duties

26  include handling grievances filed by union members and he supervises the union's representative

27

28                                                              18

1   assigned to the Darling plant, Carlos Valenzuela.  (Doc. 34, ¶ 2.)  Fursman is charged with

2   deciding whether or not "a grievance that cannot be resolved at a Board of Adjustment should go

3   to arbitration."  (Doc. 34, ¶ 4.)  Fursman attended the Board of Adjustment in Plaintiff's matter,

4   and asked that Plaintiff be reinstated without pay.  (Doc. 34, ¶ 5.) The Board did not reach a

5   majority vote.  Thereafter, Fursman made a timely request for arbitration of the matter.  (Doc. 34,

6   ¶ 5.)  Subsequently however, Fursman determined Plaintiff's matter should not proceed to

7   arbitration.  Fursman questioned Plaintiff's credibility and had no evidence to support Plaintiff's

8   claim that his car suffered a flat tire on May 30, 2007.  Moreover, Fursman was advised by

9   Valenzuela that other employees at the Darling plant believed Plaintiff "had taken excessive

10  lunches in the past."  Fursman also considered that Darling had already employed "progressive

11  discipline" with Plaintiff regarding attendance issues.  (Doc. 34, ¶ 6.)

12          After determining that Plaintiff's grievance should not proceed to arbitration, Fursman

13  sought a second opinion from counsel for the union.  Counsel met with Fursman to discuss the

14  matter and issued a letter agreeing with Fursman's assessment of the evidence and decision not to

15  proceed to arbitration.  (Doc. 34, ¶ 7.)

16                      1.      *No absolute right to arbitration*

17          The high court has previously explained that it does "not agree that the individual

18  employee has an absolute right to have his grievance taken to arbitration regardless of the

19  provisions of the applicable collective bargaining agreement."  *Vaca v. Sipes*, 386 U.S. at 191.

20  And,

21          [i]f the individual employee could compel arbitration of his grievance regardless
            of its merit, the settlement machinery provided by the contract would be
22          substantially undermined, thus destroying the employer's confidence in the union's
            authority and returning the individual grievant to the vagaries of independent and
23          unsystematic negotiation. Moreover, under such a rule, a significantly greater
            number of grievances would proceed to arbitration.  This would greatly increase
24          the cost of the grievance machinery and could so overburden the arbitration
            process as to prevent it from functioning successfully.
25

26  *Id.*, at 191-192, n. omitted; *see also Johnson v. United States Postal Service*, 756 F.2d 1461,

27

28                                                  19

1465 (9th Cir. 1985) ("[u]nions need not arbitrate every case . . .. One reason is the high cost of

arbitration. . . . Unions may screen grievances and arbitrate only those they believe are

meritorious"). The *Vaca* court concluded "that a union does not breach its duty of fair

representation, and thereby open up a suit by the employee for breach of contract, merely because

it settled the grievance short of arbitration." *Id.*

UFCW 8 decides whether or not a particular grievance is arbitrated. (Doc. 34, ¶ 4.)

Plaintiff had no right to force the UFCW 8 to take his grievance to arbitration. As the high court

has pointed out, parties to collective bargaining agreements are not likely to provide for

grievance and arbitration procedures "if their power to settle the majority of grievances short of

the costlier and more time-consuming steps was limited by a rule permitting the grievant

unilaterally to invoke arbitration." *Vaca v. Sipes*, 386 U.S. at 192.

In *Bowen v. United States Postal Service*, 459 U.S. 212, 225 (1983), the Supreme Court

noted "the union plays a pivotal role in the [grievance] process since it assumes the responsibility

of determining whether to press an employee's claims." There is no question that UFCW 8 was

solely responsible for making the determination as to whether or not Plaintiff's grievance would

proceed to arbitration.

In sum, Plaintiff has no absolute right to arbitration of his grievance.

2.    *UFCW 8's exercise in judgment was not in bad faith*

Where the conduct in question involves the exercise of the union's judgment, Plaintiff

"may prevail only if the union's conduct was discriminatory or in bad faith." *Marino v. Writers*

*Guild of America, East, Inc.*, 992 F.2d at 1486.

UFCW 8 contends Plaintiff cannot establish bad faith because he has admitted that the

only individuals handling his grievance - Fursman and Valenzuela - bore him no ill will. (Doc.

33 at 15.)

Plaintiff responds that a "failure to investigate the flat tire by an representatives

demonstrates bad faith by the union." He contends because Valenzuela did not believe his story

20

1   "he should have removed himself from the process . . . ." (Doc. 40 at 15.)  Plaintiff further asserts

2   that Ms. Noa's affidavit contains information that the "union should have investigated" and yet

3   the union did nothing. (Doc. 40 at 15.)  He complains the union never advised him he could

4   present witnesses "because they had already made up their minds that he was not telling the truth

5   . . . ." (Doc. 40 at 15.)  Plaintiff claims the union knew all along that it would not take Plaintiff's

6   grievance to arbitration.  (Doc. 40 at 16.)

7         UFCW 8 replies that because Plaintiff concedes neither Fursman nor Valenzuela bore

8   him ill will, he cannot establish bad faith. (Doc. 45 at 8-9.)  Darling points out that Plaintiff

9   conceded he was not aware of another Darling employee whose grievance proceeded to

10  arbitration where the employee returned from lunch more than two hours late.  Plaintiff cannot

11  show he was treated any differently than any other represented employee.  Lastly, Darling

12  contends Ms. Noa's statement "does not present evidence from which a reasonable inference

13  could be made that [the] Union acted discriminatorily or in bad faith here." (Doc. 43 at 5.)

14        "To establish that the union's exercise of judgment was in bad faith, the plaintiff must

15  show 'substantial evidence of fraud, deceitful action or dishonest conduct.'"  *Beck v. United*

16  *Food and Commercial Workers Union, Local 99*, 506 F.3d at 880.

17        Plaintiff has failed to show substantial evidence of fraud, deceit or dishonesty.  Plaintiff

18  himself has admitted that neither Carlos Valenzuela nor Mike Fursman bore him any ill will.

19  (Doc. 31, Undisputed Fact Nos. 32-33.)  Plaintiff's bare assertion that the union acted deceitfully

20  is insufficient.  Moreover, as this Court has previously held, the union's investigation was

21  adequate.  Thus, no fraud, deceit or dishonesty could flow therefrom.

22        As to Ms. Noa's affidavit, it primarily pertains to the actions of Darling employees. In

23  paragraph five of the affidavit, Ms. Noa declares she "contacted [Plaintiff's] union representative

24  Carlos Valenzuela and [she] told him [she had] never made a complaint against [Plaintiff] and

25  that the company had lied." (Doc. 40, Noa Decl.)  The affidavit fails to assert when Ms. Noa

26  advised Mr. Valenzuela of dishonest conduct by Darling.  Even assuming Ms. Noa telephoned

27

28                                             21

1    Mr. Valenzuela as asserted, this is not sufficient evidence that the *union* acted deceitfully or

2    dishonestly.  Notably too, Defendants' objections to Ms. Noa's affidavit were sustained.  (*See*

3    Sec. I, subh. F, *ante*.)

4            No genuine issue of material fact exists regarding whether the union acted in bad faith.

5                        3.      *There was no discrimination*

6            UFCW 8 asserts that Plaintiff cannot establish that it acted in a discriminatory fashion

7    because (1) Plaintiff's complaint does not allege the union acted in a discriminatory fashion,

8    rather the complaint alleges that his employer Darling did so; (2) that Plaintiff subsequently

9    abandoned his claim of national origin discrimination against Darling; and that, in any event, (3)

10   Plaintiff "has no evidence whatsoever that UFCW 8 acted 'in a discriminatory ethnic manner.'"

11   (Doc. 33 at 15-17.)  Plaintiff fails to address UFCW 8's assertions.  Rather, in his opposition

12   brief, Plaintiff claims discrimination for the union's failure to investigate.  (Doc. 40 at 16-17.)

13           "To establish the union's exercise of judgment was discriminatory, a plaintiff must

14   adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to

15   legitimate union objectives.'" *Beck v. United Food and Commercial Workers Union, Local 99*,

16   506 F.3d at 880.

17           As addressed previously, this Court has found the union's investigation into Plaintiff's

18   grievance to be adequate in light of the circumstances so there can be no discrimination on this

19   basis.  To the degree Plaintiff still intends to assert a claim of discrimination on the basis of race,

20   Plaintiff cannot show substantial evidence of such discrimination that is intentional, severe and

21   unrelated to legitimate union objectives.

22           UFCW 8 is correct wherein it points out Plaintiff's complaint only asserts discriminatory

23   acts by his employer Darling.  (*See* Doc. 2 at 3-4.)  But turning to whether or not substantial

24   evidence has been presented, Plaintiff himself has admitted that the only two union officials with

25   whom he dealt bore him no ill will.  He did not believe either of the men was biased against him

26   due to his Filipino national origin.  At his deposition, Plaintiff testified that he had never heard a

27

28                                                22

union employee make any derogatory or otherwise negative comment about persons of a Filipino background.  Neither did Plaintiff advise any union representative that he felt he had been discriminated against on the basis of his national origin.[4]  (Doc. 31, Undisputed Fact Nos. 32-36; *see also* Doc. 35, Ex. 1 at 164-165, 171 & Ex. 2 at 37.)

There is no genuine issue of material fact here in light of Plaintiff's own testimony.  There is no evidence whatsoever of discrimination on the part of union officials.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** UFCW 8's motion for summary judgment as to Plaintiff's second cause of action for a breach of the duty of fair representation.  In turn, Plaintiff may not prevail on his remaining cause of action for breach of written contract against Darling International, Inc, and therefore, the Court **GRANTS** Darling's joinder motion.

Hence, the Court **DIRECTS** the Clerk to enter judgment in favor of Defendants United Food and Commercial Workers 8 Golden State and Darling International, Inc., and against Plaintiff Alexander D. Labuga, Jr., and to close this case.


IT IS SO ORDERED.

**Dated:    January 21, 2010**              _____/s/ **Gary S. Austin**_____
                                            UNITED STATES MAGISTRATE JUDGE

---

[4]At no time did Plaintiff advise his employer Darling of his belief that he had been harassed or discriminated against.  (Doc. 35, Ex. 1 at 164, 171.)